IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
5:08-CV-352-D

| | |
|---|---|
| VICTORY SHERROD, )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant Victory J. Sherrod seeks judicial review of the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income. After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's motion for Judgment on the Pleadings [DE-12], and granting Defendant's Motion for Judgment on the Pleadings [DE-14].

## STATEMENT OF THE CASE

On February 15, 2005, Claimant protectively filed an application for Disability Insurance Benefits ("DIB") and for Social Security Income ("SSI"). Claimant alleged disability as of October 1, 2004, due to seizures, hypertension, heart conditions, arthritis and history of bradycardia. The Claimant's applications were denied initially on April 15, 2005, and denied upon reconsideration on July 8, 2005. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), on August 2, 2005. The hearing took place on May 15, 2007. Following the hearing, the ALJ issued a decision on June 26,

1

2007, denying the claim. The ALJ concluded that the Claimant was not under a disability within the meaning of the Social Security Act from October 1, 2004, through the date of the ALJ's decision. The Appeals Council denied Claimant's request for review on May 21, 2008, rendering the ALJ's decision a "final decision" for the purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for the purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.   The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." T.F.B. v. Astrue, 2008 WL 474350, at *5 (E.D.N.C. Feb. 15, 2008) (unreported op.) (internal quotations omitted).

This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. Walls, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and rationale in crediting the evidence. See Sterling

Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. § 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listings"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform her past relevant work, at step five, the burden shifts to the Commissioner to show that the claimant, based on her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case Claimant alleges the following errors: (1) failure to consider all impairments; and (2) improper credibility assessment.

II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step

3

sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920. The ALJ proceeded to step one, finding Claimant had not engaged in substantial gainful activity since October 1, 2004, the alleged onset date. (R. 17.); see 20 C.F.R. §§ 404.1520(b) and 416.920(b).

The ALJ then proceeded to the second step to determine whether Claimant had a "severe" impairment or combination of impairments that significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.920(c) and 404.1520(c). The ALJ found the Claimant had the following severe combination of impairments: lumbar stenosis, hypertension, seizure disorder, and history of bradycardia. (R. 17.) However, at step three, the ALJ determined that Claimant's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 18). See 20 C.F.R. § 416.920(a)(4)(iii), (e).

The ALJ then proceeded to step four to determine the Claimant's RFC by considering the objective medical evidence, the Claimant's subjective complaints, and the opinions of treating, examining, and non-examining physicians. (R. 20-21.) First, the ALJ concluded the Claimant retained the ability to lift and carry up to 10 pounds frequently and 20 pounds occasionally; to stand and walk for up to six hours in an eight-hour work day; and to sit for up to six hours in an eight-hour work day. (R. 18.) Second, the ALJ concluded that Claimant would be limited to no climbing, no working at heights or around dangerous machinery. (Id.)

At step five, the ALJ determined that Claimant was capable of performing her past relevant work as a waitress. (R. 21.) The ALJ concluded that Claimant's past relevant work did not require the performance of work-related activities precluded by the her RFC.

4

(Id.) Accordingly, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, from October 1, 2004 through the date of his decision. (R. 22.); see 20 C.F.R. §§ 404.1520(f) and 416.920(f).

III. The Administrative Hearing

    A. *Claimant's Testimony at the Administrative Hearing*

Claimant testified at her administrative hearing. (R. 298-317.) She was 62 years old on the date of the hearing. (R. 298.) Claimant was divorced and lived at home with her cousin. (R. 298-99.) Claimant completed high school. (R. 298.)

Claimant was employed as a waitress at an International House of Pancakes store in New York for twenty-two years. (R. 301.) Claimant then moved to Wilson, North Carolina and began working at Wal-Mart. (R. 301-02.) Claimant's health problems began while she was employed as a department manager for a Wal-Mart Store in Wilson, North Carolina. (R. 302.) She testified she began having seizures at that time. (Id.) After a subsequent transfer to a Wal-Mart Store in Baltimore, Maryland, Claimant suffered from seizure episodes on several further occasions. (Id.) On one occasion, Claimant's seizure episode caused her to fall from a ladder while she was in the process of stocking inventory. (Id.) Claimant was last employed in October 2004, working as a prep cook for an Applebee's Restaurant in Wilson, North Carolina. (R. 302.) Claimant stopped working at Applebee's after suffering from another seizure episode while on an errand for her employer. (R. 303.) On the day of the episode, Claimant was allowed to return home and following her release on that day, her employer never rescheduled her work calendar and Claimant assumed her employer did not want her to return. (Id.)

Based on her physician's recommendation, Claimant was placed on medication and

5

has not suffered from any further seizure episodes since leaving Applebee's. (R. 306.) Claimant's last seizure episode occurred in February, 2004. (Id.) Claimant, at the time of the hearing, was recovering from a right wrist fracture and subsequent surgical procedure requiring the insertion of a pin into her arm. (Id.) As a result of her wrist injury, Claimant stated she is unable to pick up or hold heavy objects and cannot use her hand for extended periods of time. (R. 306.)

Claimant also stated that she had heart trouble. (R. 304.) She was diagnosed with a heart murmur when she was younger. (Id.) Her symptoms, associated with her heart condition, include chest pains and not being able to breathe well. (R. 305, 310.) Claimant also suffers from high blood pressure, which she is sometimes able to control with medication. (Id.) When her blood pressure is not under control, she feels dizzy. (R. 305-06.)

Claimant has suffered persistent back problems since 1999. (R. 307.) Claimant indicated that her back problems worsened to a point where she could no longer walk, at which time she sought treatment in Pitt County. (Id.) The neurologist treating Claimant in Greenville, North Carolina initially recommended surgery. (Id.) However, at that time, Claimant was hesitant to undergo the procedure because she did not have medical insurance and the medication that she was on helped her back. (Id.) The medication that she was taking included: Darvocet, Ibuprofen, and other pain related prescriptions. (R. 308.) Claimant currently continues to take those medication, however, her pill regiment causes side effects including dizziness and drowsiness. (Id.) Claimant indicated that her medication often causes her to fall asleep for periods estimated between twenty and thirty minute intervals. (Id.)

6

Claimant also indicated problems associated with her legs. (R. 313.) Her treating physician informed her that her leg problems may be related to her back condition. (Id.) Claimant has trouble bending down and picking up objects from the floor. (Id.) Claimant stated that sometimes she cannot even carry her pocketbook without her back and chest hurting. (R. 313-14.) As a result of her leg, back, and chest pains, Claimant often sits and rests in her home most of the day. However, Claimant testified she was capable of performing common cleaning tasks and had the ability to walk short distances. (R. 311-12.) She testified that she tries to go to church every Sunday and also sings in the church choir. (R. 312-13.)

      B.    *Vocational Expert's Testimony at the Administrative Hearing*

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 315.) The VE classified Claimant's job as a Department Manager as medium work and the Claimant's job as a Waitress as light, unskilled work. (R. 316.) Based on the VE's assessment stated above, the ALJ then posed the following hypothetical: "If I had an individual who was limited to light work with no climbing, working at heights or around dangerous machinery, would they be able to do any of the claimant's past relevant work?" (Id.) The VE responded in the affirmative. (Id.) According to the VE, with a Dictionary of Occupational Title ("DOT") code of 311.477-030, the waitress job would be appropriate. (Id.) The VE stated, "The only question would be whether the claimant would be required to go back into the kitchen or be around the stove?" (Id.) The ALJ next inquired whether the position as a department manager, with a DOT code of 299.137-101, would be appropriate? (Id.) The VE responded negatively, stating the position was not appropriate because part of the job required stocking, therefore the claimant would have to climb ladders to place the

7

merchandise on the shelves. (Id.)

IV. Claimant's Arguments

    A. *ALJ Properly Considered All Medically Determinable Impairments*

Claimant argues that the ALJ failed to consider all of her impairments. Specifically, Claimant contends the ALJ did not discuss her right wrist fracture and did not indicate why he did not find it to be a severe impairment. Claimant has the burden of establishing that an impairment is severe. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (noting that a claimant bears the burden of proof for the first four steps of the sequential evaluation). Claimant also bears the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on her ability to work on a sustained basis. See 20 C.F.R. §§ 404.1512(c), 416.912(c) and 20 C.F.R. §§ 404.l545(a)(3), 416.945(a)(3); see also Pass v. Chater, 65 F3d 1200, 1203 (4th Cir. 1995).

The ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms. See 20 C.F.R. §§ 404.1529(c), 416.929(c). However, that duty does not extend to speculating as to the impact of those symptoms. Claimant listed in her Disability Report Form SSA-3368 that she was requesting disability compensation because of seizures, high blood pressure, heart conditions and arthritis. (R. 48.) In addition, at her hearing, Claimant emphasized her seizures, back problems and heart/blood pressure issues. (R. 304-14.) In fact, Claimant's lawyer, in summing up asked her, "And how much weight do you think you can lift before it hurts your back, or before it bothers your chest?" (R. 313.)

Moreover, the medical record indicates that Claimant's wrist was healing after her surgery, which occurred in June, 2006. (R. 278.) Her doctor noted that "[s]pot films were obtained which demonstrate a plate and screw device transfixing the fracture fragments

8

which are in good alignment and position." (R. 278.) In addition, less than a month after she fractured her wrist, one of her doctor's noted that "[s]he is doing well" after her wrist surgery. (R. 264.) On subsequent trips to the doctor–August 17, 2006, September 14, 2006, September 27, 2006, October 12, 2006, November 15, 2006, November 17, 2006, and December 20, 2006–Claimant did not complain of wrist pain. (R. 263, 262, 260, 259, 258, 256, 255, 254.) Therefore, Claimant failed to show that her wrist fracture restricted her manual functioning for at least 12 months, as required by the Social Security regulations. See 42 U.S.C. §§ 416(i)(1), 423 (d)(1) (In order for an ALJ to find a claimant disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.").

Claimant is correct that an ALJ must consider the combination of impairments that a claimant presents, even if they are not severe. See Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir. 1986) (noting that an ALJ must consider the combined effects of multiple impairments). Here, the ALJ did just that, and considered Claimant's wrist fracture along with her severe impairments and other medical complaints. The ALJ noted that Claimant suffered from a wrist fracture and that she testified that because of it she could not lift heavy objects. (R. 19.) In addition, he considered the medical report of her fracture. (R. 20.) Also, the ALJ considered Claimant's seizure disorder, hypertension, heart conditions, arthritis, and history of bradycardia, and exhaustively reviewed the medical records in which Claimant complained of these ailments. (R. 17-19.) The ALJ concluded, after reviewing all of the medical evidence, that Claimant was limited to performing light physical work- a more restrictive RFC finding than the state agency physician. (R. 17-22.)

9

Accordingly, the ALJ engaged in the proper analysis, and considered the combined effects of Claimant's impairments, both severe and not severe, in determining her RFC. Therefore, it is the court's opinion that the ALJ's decision is supported by substantial evidence.

B.  *ALJ Properly Made Credibility Determination*

Next, Claimant argues that the ALJ erred in considering her testimony to be "not entirely credible." (R. 19.) In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996), superceded by statute on other grounds. Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, after assessing Claimant's medical records and her testimony, the ALJ concluded, at the first step of the credibility analysis, that "Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (R. 19.) Nonetheless, the ALJ found, at step two, that "Claimant's statements

10

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (R. 19.) The ALJ provided specific reasons for his adverse credibility finding. For instance, he noted that Claimant's physical state and medical records did not support the level of pain to which Claimant testified she suffered. (R. 21.) Specifically, he noted that "[C]laimant does not have any significant anatomical deformities and there is no evidence of ongoing nerve root compression which might be expected based on the degree of pain alleged. (Id.) The ALJ also noted that although Claimant alleged disabling pain, her treatment history does not suggest that she was so disabled. (R. 21.) An ALJ may permissibly consider a Claimant's treatment plan in making a credibility determination. See SSR 96-7p. In addition, the ALJ noted that Claimant is able to perform some activities of daily living, such as making the bed, washing and folding clothes, and going to church and singing in the choir. (R. 19.) Also, the ALJ pointed to medical records that indicate that many of Claimant's ailments seem to be controlled with medication. (R. 20.) Therefore, the ALJ presented sufficient reasons to conclude that Claimant's testimony was not wholly credible.

The fact that Claimant can point to other evidence in the record that supports her claimed impairments does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the responsibility of this Court to determine the weight of the evidence. Id. Here the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding Claimant not fully credible.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings [DE-12] be **DENIED** and Defendant's motion for judgment on the pleadings [DE-14] be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 20th day of July, 2009.

<pre>                                          _____
                                          DAVID W. DANIEL
                                          United States Magistrate Judge</pre>